CASE 39—INDICTMENT—NOVEMBER 13.

# Dugan v. The Commonwealth.

### APPEAL FROM KNOX CIRCUIT COURT.

1. EVIDENCE—PREJUDICIAL ERROR.—Upon the trial of an indictment charging murder where a witness for the Commonwealth testifies as to the location of the parties when the shooting was done, and the defense introduces a witness to show that the Commonwealth's witness had told a different story as to the location, defendant was not prejudiced by the statements in rebuttal of the Commonwealth's witness as to what defendant's witness had said when same did not tend to establish the guilt of the accused.

2. SAME.—It was not prejudicial to appellant when the lower court refused to permit him to show facts tending to impeach a witness for the Commonwealth, when substantially the same facts testified to by the witness were shown by several other witnesses.

3. EVIDENCE IN REBUTTAL.—The Commonwealth having shown that defendant had used a 44 caliber revolver, and defendant having introduced evidence to show that the ball which was taken from the body of the decedent weighed less than a 44 caliber bullet, the Commonwealth was properly permitted to show in rebuttal that a bullet fired through bones and tissues would lose in weight, and how much.

4. EXPERT TESTIMONY.—On the question as to whether a bullet fired into the human body will lose weight in passing through the bones and tissues, and how much, the opinion of a physician, based upon his experience and on his knowledge acquired by the study of books relating to his profession, was properly admitted as expert testimony.

5. CONFESSIONS, COMPETENCY OF.—Appellant's confession made the night of the shooting was competent evidence against him in the absence of anything to show that he was influenced in making it by fear as he claimed.

6. CONFESSIONS—COURT THE JUDGE OF.—The trial court is the judge as to the admissibility of a confession as evidence, and will not give an instruction to the jury which will in effect allow them

[16]

to determine whether it was proper to consider the same as evidence.

7. CONFESSIONS—*Corpus Delicti.*—Under the provisions of section 240, of the Criminal Code, a confession out of court by a defendant accompanied with proof of the *corpus delicti* will warrant a conviction, and it is unnecessary for the court to give the jury an instruction as to the effect of a confession not made in court.

JAMES D. BLACK FOR APPELLANT.

1. The evidence by the police officers that appellant some time after the shooting attempted to draw his pistol on them was not competent as part of the *res gestae;* was highly prejudicial to appellant, and must have poisoned the minds of the jury against him. Hallowell v. Hallowell, 1 Monroe, 130; Am. & Eng. Enc. of Law, vol. 21, pages 99-111; Coppage v. Com., 3 Bush, 532.

2. The evidence of the witness, Emma White, as to what Mrs. Whittaker had said to her, related to matters purely irrelevant, and was incompetent. Kennedy v. Commonwealth, 14 Bush, 360; Champ v. Commonwealth, 2 Met., 24; Loving v. Commonwealth, 4 Ky. Law Rep., 457; Crittenden v. Commonwealth, 6 Ky. Law Rep., 20.

3. The evidence of Dr. Caldwell was incompetent for any purpose in that it was the merest hearsay; and the authenticity of the case in the book to which he referred was not vouched for in any way before the jury and the book itself was not produced on the trial; and even if it would have been competent in chief, there was no good reason shown, as required by the Code, why it was permitted to be introduced in rebuttal. 7 Am. & Eng. Enc. of Law. pages 491, 492 and 513 and notes; Champ v. Commonwealth, 2nd. Met., 27; Knoll v. State, 42 Am. Reports, 704; Underhill on Evidence, sec. 189 and notes; Criminal Code, secs. 221, 223 and 224.

4. The privilege of refusing to answer a question which may criminate him is exclusively the privilege of the witness, neither party to the action can claim it, or raise an objection on behalf of the witness. 29 Am. & Eng. Enc. of Law, pages 843 and 845; Mitchell v. Commonwealth, 12 Ky. Law Rep., 458; 7 Am. & Eng. Enc. of Law, page 109; Rutherford v. Commonwealth, 2d. Met., 387.

5. Confessions made to officers and persons who have a prisoner under arrest and by means of inducement held out by such persons, or cause of fear on account of his surroundings at the time, are incompetent. And the witnesses who detail such a

Dugan v. The Commonwealth.

confession must first show that the same was not made under
such circumstances before it will be competent. Greenleaf on
Evidence, secs. 214, 215, 219, 220 and 223; Underhill on Evidence,
sec. 88 A; Ellis v. The State, 7 Am. State Reports, 634; Baker
v. The State, 8 Am. State Reports, 427; Green v. State, 30 Am.
State Reports, 167; Rutherford v. Commonwealth, 2 Met. 337;
Jane v. Commonwealth, 2 Met., 31; Young v. Commonwealth,
8 Bush, 366.

6. The court having refused to take from the jury the evidence as
to the alleged confessions should have given the instruction
asked by appellant, explaining how far the same should be con-
sidered. Myers v. Baker, Hardin, 553; Vaughn v. Hann, 6 B.
M., 338; Ellis v. The State, 7 Am. State Reports, 634; Underhill
on Evidence, sec. 89.

G. W. SAULSBERRY ON SAME SIDE.

1. The circumstances under which appellant made the alleged con-
fessions were such that they were absolutely worthless as evi-
dence, and should not have been introduced. There was intense
excitement in the town, everybody was arming themselves, the
deceased's friends were rushing frantically around threatening
mob violence, and appellant was surrounded by officers of the
law, who were close personal and political friends of the
deceased. Greenleaf on Evidence, vol. 1, sec. 220; Commonwealth
v. Smith, 119 Mass., 305; Commonwealth v. Cuffey, 108 Mass.,
285; Cooley's Constitutional Limitations, secs. 383 and 387;
Jones v. State, 25 Am. State Reports, 715; Searcy v. State, 19
Am. State Reports, 811 and 851; Green v. State, 38 Am. State
Reports, 167; 88 Georgia, 516.

2. In order to make a confession admissible as evidence it must
be free and voluntary, and must not be extracted by any sort of
threats or violence or by direct or implied promises,
however slight, nor by the exertion of any improper influence.
Rector v. Commonwealth, 88 Ky., 468; 8 Bush, 366; 2d. Met.,
387; 2d Duval, 531.

3. The circumstances under which the confession is made should be
first shown, and if they are such as to have made the same
voluntary, it may be submitted to the jury, otherwise excluded.
Murphy v. State, 63 Ala., 1; King v. State, 40 Ala., 314; Com-
monwealth v. Culver, 126 Mass., 464; State v. Duncan, 64 Miss.,
262; Hudson v. Commonwealth, 2 Duval, 531; Young v. Com-
monwealth, 8 Bush, 366; Collins v. Commonwealth, 15 Ky. Law
Rep., 691; Rice on Criminal Evidence, vol. 3, sec. 308.

Dugan v. The Commonwealth.

D. K. RAWLINS AND J. H. CATRON OF COUNSEL ON SAME SIDE.
TINSLEY & FAULKNER FOR APPELLEE. '

1. To render a confession incompetent as evidence the threats or
   inducements, if any, must be made by some one acting under
   authority or the semblance of authority. Young v. Common-
   wealth, 6 Bush, 370; Butler v. Commonwealth, 2 Duval, 435; Hud-
   son v. Commonwealth, 2 Duval, 531.

2. If any part of the confession was made at a time when no such
   inducements or threats were made that part is' competent. Wig-
   ginton v. Commonwealth, 92 Ky., 282.

3. The question as to the admission of a confession is for the court.
   Greenleaf on Evidence, vol. 1, secs. 219, 220 and 221; Young v.
   Commonwealth, 6 Bush, 370.

4. There being abundant evidence outside of the confession con-
   necting appellant with the crime the Code instruction as to con-
   fessions need not be given. Bush v. Commonwealth, 13 Ky.
   Law Rep., 435.

5. The evidence of Dr. Caldwell in rebuttal was proper in further-
   ance of justice.

W. S. TAYLOR OF COUNSEL ON SAME SIDE.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT:

The appellant, John Dugan, was indicted for the murder of
John C. Colson, was found guilty of manslaughter and sen-
tenced to the penitentiary for twenty-one years. On June 1,
1897, between seven and eight o'clock p. m., Colson was shot
and killed in the city of Middlesborough. The testimony in the
case is too voluminous to be given here. According to the ·
testimony offered by the Commonwealth, Dugan shot and
killed Colson. Dugan and William Miller had some trou-
ble in front of what is known as the "Colson Block." Col-
son was the peacemaker; he disarmed Dugan by taking from.
him, in a friendly way, his revolver. The parties separated,
Dugan went to his house, procured a forty-four Remington
and in a few minutes returned to a place near where the
difficulty and separation had taken place. There was a

vacant lot adjoining the "Colson Block;" on this lot Miller and Colson had hitched their horses. Dugan left Cumberland avenue, on which this lot faces, went to within a few feet of where Colson and Miller were unhitching their horses. Colson had unhitched his horse and turned, facing Dugan. It was light enough for Dugan to have recognized Colson and Miller. Dugan shot Colson, and immediately fired at Miller. Herman Weinstein, who did business on the opposite side of the street, testified that he saw a man holding a pistol; there was a flash, then a man said, "Oh, he shot me," then another shot was fired, and Colson walked to the avenue, then up a stairway, leading to the second floor of his block, where, in a few minutes, he expired. Dugan immediately came upon the sidewalk, holding a pistol in his hand. This witness also testified that the person who did the shooting had on a light suit of clothes, as Dugan appeared to have been dressed. A colored girl, who lived at Dugan's house, testified that she saw some one present a pistol while standing at the place where the Commonwealth claims that Dugan stood when the shot was fired that killed Colson. This girl was standing in the yard back of Dugan's house. Without repeating here what Dugan said, it is sufficient to say that Dugan admitted to several persons that he had shot Colson. There is proof in the record tending to show that Dugan had an ill feeling toward Colson. Numerous witnesses testified that only two shots were fired on the occasion when Colson was killed. Dugan testified that he fired two shots at William Miller; that Miller was attempting to take his life; that he fired the shots in self defense. Dugan seeks to sustain his claim that Miller fired at him by

attempting to prove that the second report was louder than the first; and he claims that is to be accounted for because that Miller fired at about the same time that he, Dugan, fired the second shot. There is no escape from the conclusion, after carefully reading this record, that Dugan purposely shot and killed Colson. We do not entertain the slightest doubt of his guilt. Numerous errors are assigned for a reversal of the case. We will briefly consider some of them. It is claimed the court erred in allowing the chief of police and his deputy to testify as to what Dugan did when the chief of police approached him while he was under arrest in charge of the deputy. Counsel contends that the court permitted the Commonwealth to prove that Dugan attempted to draw his pistol on the chief of police and his deputy. After the arrest the deputy allowed Dugan to retain his pistol until the chief of police appeared on the scene. Neither of these officers testified that Dugan drew his pistol on them. They say that when the chief of police came up, Dugan had the pistol in his bosom or pants; he went to draw it and the chief of police asked him to give it to him. It does not appear from the testimony that Dugan was drawing it in a hostile manner, or resisted the effort to take the pistol, and we are unable to see how the facts, with reference to the surrender of the pistol as given by the officers, did or could have prejudiced the defendant in the slightest degree.

Emma White was introduced by the Commonwealth in chief, and testified that she was standing in Dugan's back yard when the shots were fired; that she saw a man raise a pistol to fire, but she did not know who it was, as she

Dugan v. The Commonwealth.

threw her apron over her face so that she could not see the firing; she said the party who did it stood near the pavement. The defendant, ostensibly to impeach the testimony of Emma White, introduced Mrs. Whitaker. She testified that the White girl told her a few mornings after Colson was killed that she saw a man shoot a pistol near the rear of the "Colson Block." In view of the testimony of the defendant and the Commonwealth as to the location of the parties when the firing took place, this testimony was unimportant, as all admitted that the shooting took place in the vacant lot between the Colson building and the paling fence; besides it was an effort to make substantive testimony for the defendant by contradicting Emma White, which is not permissible. In view of this fact the testimony of Mrs. Whitaker, as to what Emma White said, was so unimportant that the defendant could not have been prejudiced by the action of the Commonwealth in proving by Emma White certain statements made to her by Mrs. Whitaker. The statements which Emma White claims that Mrs. Whitaker made to her did not in the slightest degree tend to establish the guilt of the accused. It is contended that the court erred in refusing to compel Bosworth to answer questions with reference to an alleged corrupt and dishonorable transaction at a certain election of which he was one of its officers. Bosworth testified that Dugan said in the city hall that Colson had slapped him in the face and took his pistol away from him, and added, "You know me well enough to know that I would kill any s— of a b— that would treat me that way." This was the important testimony which Bosworth gave. A number of witnesses had testified substan-

Dugan v. The Commonwealth.

tially to the same facts. Dugan admitted that he had made various admissions inculpatory in their character, but claimed that he did it through fear of Miller and his friends. It may be assumed that the court erred in refusing to allow Bosworth to answer the questions, and the defendant to prove the truthfulness of its avowal that he could show that Bosworth was guilty of the misconduct in the election, still Dugan was not prejudiced by it because several other witnesses had testified substantially to the same facts to which Bosworth had given testimony; besides Dugan in his examination as a witness substantially admitted that he made the inculpatory statements. It appeared in the testimony that the pistol from which Dugan fired the shots was a forty-four Remington. The proof tended to show that the ball of a forty-four cartridge would weigh before it is shot two hundred grains; that the ball in same condition as when removed from the body weighed only one hundred and seventy-six grains. Dr. Robinson said that the ball passed through the collar bone and the shoulder blade; and that the effect of a ball passing through such bones would be to reduce its weight. He did not give an opinion as to what the loss would be. The defendant offered testimony to show that the balls which had been shot from a forty-four cartridge into soft wood, and into the earth, and some other substances, not bone, would lose a certain number of grains, but much less than twenty-four grains. In rebuttal the Commonwealth introduced Dr. Caldwell, who gave an opinion from his experience and knowledge, that a ball fired into the body, passing through tissue and bones, would be reduced in weight, and he also gave an opinion, from knowledge which

Dugan v. The Commonwealth.

he had acquired from the study of medical works, that a ball fired into the skull, which is about the same thickness of the collar bone, would be reduced in weight from three to fifty grains. It is contended that it was erroneous for the court to admit this testimony, first, because it was not offered properly in rebuttal; second, because he was not competent to give an opinion as an expert.

Under section 224, Criminal Code of Practice, after the defendant has closed, the Commonwealth may offer rebutting evidence, and for a good reason and in furtherance of justice may be permitted to offer evidence upon her original case. We think this testimony was properly offered in rebuttal. The defendant had introduced evidence by which it was attempted to show that the ball which was taken from the body of Colson was not a forty-four; then the Commonwealth offered Dr. Caldwell as an expert, to show that a ball might be reduced, even more than twenty-four grains, by passing through bones and tissues of the human body. Experts acquire knowledge through actual experience, and by their study of certain subjects. They in that manner qualify themselves to give opinions on certain subjects of which they have such special knowledge, and it is competent for them to do so within certain limitations. We think that Dr. Caldwell's experience, and the knowledge which he had acquired by the study of books relating to his profession and the subject under investigation, rendered him competent to give an opinion as to the effect on a ball which passed through bones and tissues of the human body. It is contended that the confession or admissions of the defendant were made under such circumstances as rendered

them involuntary. The rule is well established that confessions induced by the promises, threats and advice of the prosecutor or officer having the prisoner in charge, or of any one having authority over him, or the prosecution itself, or a private person in the presence of one whose acquiescence may be presumed, will be deemed involuntary, and will be inadmissible as evidence. (Young v. Commonwealth, 8 Bush, 366.)

This is a well-settled rule. The testimony shows that none of the causes stated existed for rejecting the testimony, but it is claimed that the confessions were made because the defendant was afraid of one William Miller and his friends; that he was afraid to state the facts with reference to the shooting as he claimed them to exist; that they would have implicated Miller, and thus imperiled the life of the defendant. Although the defendant claimed on the trial of this case that Miller attempted to shoot him and he shot in self-defense, and if he shot Colson it went wide of the mark, because he was shooting at Miller. Yet, at the time of the admissions which the Commonwealth proved, he never intimated that he shot at Miller. He admitted to the officer in charge that he had shot Colson; he did this before Miller had appeared on the scene. After the shooting he went so far as to give the reasons for shooting Colson, and the testimony strongly tends to prove that the first shot which was fired was the fatal one, and Dugan admits that he fired it, although he contends that he fired it at Miller. It is wholly inexplicable to us why Dugan was afraid to admit on the night of his arrest that he had shot at Miller as he did not hit Miller, and, as he contends, it was done in self-defense, yet

Dugan v. The Commonwealth.

was willing to admit that he had purposely killed an influential citizen and sought to mitigate or justify his act. The testimony in the record shows that there was great excitement in the town, resulting from the killing of Colson, but not the slightest evidence tending to prove that the excited condition of the people influenced Dugan to make the admissions.

We think the court properly permitted the evidence of the confessions or admissions to go to the jury. The jury heard all the evidence relating to the circumstances under which they were made, and they were the judges as to the weight which should be given them.

It is contended that the court should have given the jury the instructions which would in effect have allowed the jury to determine whether it was proper for them to consider the admissibility of the confessions as evidence. This court has uniformly held that the court is the judge as to the admissibility of the confessions as evidence. We deem it unnecessary to cite authority on this question, as the rule we have stated has always been recognized by this court as the correct one.

Section 240, Criminal Code of Practice, reads as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed." It is contended that the court erred in not giving the jury an instruction on the subject as to the effect of a confession not made in open court.

In the case of Cunningham v. Commonwealth, 9 Bush, 149, it was ruled that, besides proof of any confession a defendant

may have made of his guilt, unless made in open court, there must, to warrant a conviction, be other evidence conducing to prove him guilty of the offense alleged to have been committed by him. The language of section 240 does not admit of such an interpretation.

Patterson v. Commonwealth, 86 Ky., 313, accords with this view. In that case the court said, if the confession is accompanied with proof that such an offense was committed, *i. e.*, with proof of the *corpus delicti*, it will warrant a conviction. The court in that case also held in effect that section 240 was a legislative declaration of a rule that had previously existed.

Wigginton, &c. v. Commonwealth, 92 Ky., 282, reaffirmed the interpretation which had been made of section 240 in the Patterson case. These cases gave an entirely different meaning to section 240 to that which had been given by the court in the Cunningham case. While the court did not in these cases in terms overrule the Cunningham case, yet in effect did say so. We adhere to the doctrine of the Patterson and Wigginton cases and overrule the Cunningham case.

We do not say that a case may not arise in which it would be proper for the court to tell the jury the effect of extra judicial confessions, but we are of the opinion that in this case it was not necessary to do so. The *corpus delicti* was abundantly proven as shown by the facts that we have heretofore given, independent of the confession or admissions of the defendant out of court, hence it was unnecessary for the court to give the instruction in question. This view is in accord with Bush v. Commonwealth, 13 Ky. Law Rep., 425.

We are of the opinion that no errors of law occurred at the trial which prejudiced the substantial rights of the defendant.

The judgment is affirmed.