## Higgins v. Commonwealth.

(Decided March 9, 1911.)

### Appeal from Greenup Circuit Court.

1. Homicide—External Wound—Doubts of Guilt—Confession Out of Court.—Evidence Must Show Guilt.—Where the deceased is shown to have died from an external wound but the circumstances leave it in doubt whether the wound was intentionally inflicted, and the Commonwealth relies on confessions made by the prisoner out of court, the court should instruct the jury that they can not convict upon confessions out of court unless there is evidence showing that the crime was committed.

2. Evidence—Piece of Pipe—Human Hair Attached—Competency.—It is error to allow a piece of pipe to be introduced in evidence, and proof to be made that human hair was sticking to it without proof as to where the pipe came from or connecting it in some way with the homicide.

3. Accomplice—Declarations of Competency as Evidence.—Declarations of an accomplice or a conspirator made after the homicide in the absence of the defendant, can not be given in evidence against him.

4. Contradicting Witness—Proof of Inconsistent Statements.—To contradict a witness by showing that he has made out of court statements inconsistent with his testimony, he must first be asked as to the statements with time, place and persons present be fixed; and the statements must be material.

5.  Witness—Evidence of Accepting Bribe.—If a witness has stated out of court in effect that he has received or expects to receive money for his testimony, this may be shown, but the witness should first be asked as to the statement with the time, place and persons present when it was made.

6.  Aider and Abettor.—One indicted as present aiding and abetting in a homicide may be convicted as a principal.

7.  Instructions.—Where there is no evidence on which an instruction as to voluntary manslaughter, involuntary manslaughter, or self-defense may be based and the proof shows that the crime was murder or the defendant was innocent, only an instruction on murder should be given, and this is true where the evidence is circumstantial, and there is nothing in the circumstances to indicate a struggle or to reduce the degree of the crime.

THEO. K. FUNK and A. S. COOPER for appellant.

JAMES BREATHITT, Attorney General, TOM B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Fred Ferguson and Sarah Hill Higgins were indicted for the murder of William Culbertson. She was tried first. The jury found her guilty and fixed her punishment at eight years in the State penitentiary. The court entered judgment on the verdict and she appeals.

The facts as shown by the proof for the Commonwealth on the trial are these: William Culbertson was the night agent of the Chesapeake & Ohio Railway at South Portsmouth, Kentucky, which is just across the Ohio river from Portsmouth, Ohio. Sarah H. Higgins and Ferguson lived in Portsmouth, Ohio, although she was a native of Kentucky, and had lived until shortly before the death of Culbertson, in South Portsmouth, Kentucky. She had a son named Ike. Ike and Ferguson were arrested by the railway authorities some weeks before Culbertson's death, for stealing coal. After this, Ike had a difficulty with William Culbertson, whom he charged with having had him arrested. Culbertson slapped him and he then went off and got a gun. His mother who was present when he came back with the gun, told her son to shoot him, and then when he did not shoot him, said, "Give me the gun, and I will shoot him," using a vile oath. About two weeks before Culbertson's death, she said she would bet a dollar that inside of two weeks Culbertson wouldn't make anybody else quit get-

ting coal. On Saturday before his death, she said in the presence of several people that she would kill the man who had her son arrested, if she had to slip up behind him and knock him in the head. Some of the witnesses say that she used Culbertson's name in this connection. On the next day she said that they had Ike in jail for stealing coal, and that if she had her gun she would blow the man's brains out who had him arrested. She was then in Portsmouth, Ohio, and went toward the river. According to other testimony for the Commonwealth, she was not about her home any more that evening. That night Culbertson was the only person at the depot. He sold tickets for a passenger train which passed at 12:24, and about that time talked over the telephone to the dispatcher who was at another building, several hundred yards away. At 1:24 a freight train passed from the east, the first train which passed after the passenger. A brakeman on this train sitting in the engine, saw the body of a man lying on the platform near the depot with his feet toward the track, and his head out from it. The brakeman looked at the man after he passed him on the engine to see if he was free of the cars, and when he reached the next station, reported the fact to the conductor of a train he met there going west, thinking perhaps the man was drunk. The conductor of the westbound train saw the man as he passed in the same position as the brakeman on the other train. He reported the matter to the station agent, as he passed but did not stop. The station agent then called up the depot by 'phone, but got no answer. This was about 2:30. Early in the morning a person went to the depot, and found Culbertson lying on the platform in the position described. He was alive but unconscious. His skull was crushed on the right side of his head; the top of the right ear was clipped; the left eye was black; he had bled profusely from the nose and mouth; there was a slight bruise or cut on the left hand, and a slight bruise on each elbow. He died without regaining consciousness. Between 2 and 4 o'clock Monday morning, Mrs. Higgins met a woman in an alley near where she lived; seemed to be frightened, and said to her, "I told you this ticket agent should never interfere with William Ike; I told you last night he should never see the sun set again; we fixed him; we got him out of the way; I got that Ferguson boy to help. When the early train went by we came down, and I called this ticket agent to the door, and asked him to

change some money for me, and he started to change the money and the Ferguson boy hit him with a club; we then took him by the feet and shoulders and laid him on the railway track to make people think the train killed him." It was shown by other witnesses in Portsmouth that she made similar statements to them. To the officers who arrested her after Ferguson was arrested, she said that there were only three people on earth that knew anything about the case, that they had the right man in jail that did the killing.

It is insisted that this proof was not sufficient to warrant the conviction of the defendant for the reason that the corpus delicti was not shown. In 3 Greenleaf on Evidence, section 30, it is said:

"The proof of the charge in criminal cases involves the proof of two distinct propositions: First, that the act itself was done; and, secondly, that it was done by the person charged, and by none other; in other words, proof of the corpus delicti, and of the identity of the prisoner. It is seldom that either of these can be proved by direct testimony; and, therefore, the fact may lawfully be established by circumstantial evidence, provided it be satisfactory."

Again, in section 131, speaking of the corpus delicti, the learned author says:

"And this involves two principal facts, namely, that the person is dead, and that he died in consequence of the injury alleged to have been received."

In section 134, he further says:

"The death and the identity of the body being established, it is necessary, in the next place, to prove that the deceased came to his death by the unlawful act of another person. The possibility of reasonably accounting for the fact by suicide, by accident or by any natural cause, must be excluded by the circumstances proved; and it is only when no other hypothesis will explain all the conditions of the case, and account for all the facts, that it can safely and justly be concluded that it has been caused by intentional injury."

The Commonwealth showed here beyond doubt that Culbertson was dead and that he came to his death from a blow on the head which fractured his skull. The identity of the prisoner with the crime was shown wholly by circumstantial evidence and her own declarations. It is earnestly insisted that the proof does not show that anybody killed Culbertson, that it is reasonable from all the

circumstances that he was sleeping on the platform and raised up as the train passed him and was struck by the cars, thus receiving the injury on his head; but this was a question for the jury. Section 240 of the Code provides:

"A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

In Patterson v. Commonwealth, 86 Ky., 320, the court pointing out the difference between section 240, relating to confessions out of court, and section 241, relating to the testimony of an accomplice, said:

"But there is a material difference between the two sections. For while one relates to the legal effect to be given to a confession when proved as a fact, the other not only prescribes the legal effect which may be given to the testimony of an accomplice when credited, but also determines the condition upon which the jury may give any credence to it. The converse of the proposition stated in section 240 is, that if the confession is accompanied with proof such offense was committed, that is, with proof of the corpus delicti it will warrant a conviction." (See also to same effect Wigginton v. Commonwealth, 92 Ky., 289; Dugan v. Commonwealth, 102 Ky., 252; Gilbert v. Commonwealth, 111 Ky., 798.)

It is also held in the cases cited that if it is doubtful if the crime has been committed, the jury should be instructed in the language of this section. The defense here was rested in a large measure on the ground that the circumstances shown were consistent with the fact that the deceased was struck by the train; and while there was evidence sufficient to go to the jury that the offense had been committed, the court should have instructed the jury as provided in section 240.

The Commonealth was allowed to introduce on the trial a piece of iron pipe which the witness stated another man had brought to him at the depot some days after the homicide, and to show that the wound might have been inflicted by such an instrument and that human hair was sticking to the pipe in color like Culbertson's. The evidence did not show where this piece of pipe came from, when or by whom it was found, and there was nothing in the evidence to connect it in any way with the homicide. It should not have been admitted in evidence without proof showing when and where it was found, and in whose possession it had been since it was found. It

should also appear from the evidence that it was found at a time and place furnishing reasonable ground to connect it in some way with the homicide. The proof need not positively show the connection, but there must be proof rendering the inference reasonable or probable from its nearness in time and place or other circumstances.

The Commonwealth was allowed to prove statements which were made by Ferguson when he was arrested for the crime, and also statements which he made on the same night that Culbertson was struck, but after he was seen lying on the platform. Any statement that Ferguson made not in her presence after the homicide was committed, is incompetent against Sarah Hill Higgins. The declarations of an accomplice after the commission of the crime, cannot be shown against his co-defendant. All of this evidence should have been excluded. In 3 Greenleaf on Evidence, section 94, the rule and the reason for it, are thus stated:

"It is the same principle of identity with each other that governs in regard to the acts and admissions of agents, when offered in evidence against their principals, and of partners, as against the partnership, which has already been considered. And here, also, as in those cases, the evidence of what was said and done by the other conspirators must be limited to their acts and declarations made and done while the conspiracy was pending, and in furtherance of the design; what was said or done by them before or afterwards not being within the principle of admissibility."

Complaint is made that the defendant was not allowed to contradict certain of the witnesses for the Commonwealth, by showing that they had made out of court statements inconsistent with their testimony. Section 597 of the Code provides that a witness may be impeached by evidence showing that he has made statements different from his testimony. Section 598 is as follows:

"Before other evidence can be offered of the witness having made at another time a different statement, he must be inquired of concerning it, with the circumstances of time, place and persons present, as correctly as the examining party can present them; and, if it be in writing, it must be shown to the witness, with opportunity to explain it."

Counsel in their interrogation of the witnesses did not conform to the statute in fixing the circumstances of time, place and persons present. The time and place should be fixed as accurately as the examiner can reasonably do, and he should name as many of the persons present as he reasonably can, and where only certain persons were present this should be indicated in the question. If the proper foundation is not laid in the examination of the witness, the impeaching witness cannot be examined. Evidence of statements out of court can only be admitted when the statement is inconsistent with the testimony of the witness as given on the trial. To illustrate, one of the witnesses for the Commonwealth was asked if she had not told the defendant's attorney that another witness for the Commonwealth had made a certain statement. This was entirely immaterial, as it in nowise conflicted with her testimony on the trial. On the other hand a statement by one of the Commonwealth's witnesses to the effect that she knew nothing about the case, when on the trial she had given damaging evidence, was competent to impeach her testimony. But such questions should be confined by counsel to material matters, and nearly all the questions embraced immaterial matters. The question that was asked Martha Dowdy as to the conversation she had with Sarah Sheets near the residence of John B. Hill did not fix the time or persons present. The subject matter of this question was proper, if the time, place and persons present had been given. Statements made by the witnesses for the Commonwealth out of court to the effect that they had gotten money or were getting money for their testimony in the case, may be shown by the defendant; but the witnesses must first be asked as to these statements, and the time, place and persons present, must be indicated, so that the witnesses may not be at a disadvantage, but may understand what conversation is referred to. The defendant offered to show that Martha McGraw made to William George the following statement, "I don't know anything about it myself, but, though, I reckon I can do like all the rest, tell around I do, and get a fee for it to go up there." Martha McGraw was an important witness for the Commonwealth. This statement is inconsistent with her testimony on the trial and it may be shown that she made the statement, if she is first asked about it, and the time, place and persons present are fixed. What we have said does not cover all the mat-

ters complained of but is illustrative of all. The court will not allow a witness to be contradicted as to statements made out of court unless material, and he will caution the jury that the contradictory evidence is only to be considered by them on the credibility of the witness thus attacked.

On another trial the court will omit all of instruction 1 except so much as defines the words "wilful," "wilfully," "feloniously" and "with malice aforethought." The remainder of the instruction is unnecessary, and may mislead the jury by giving prominence to the matters therein referred to. So much of instruction 2 as told the jury that they might find the defendant guilty if she struck and wounded William Culbertson, was proper. The offense is set out in the indictment in these words:

"The said defendants, Fred Ferguson and Sarah Hill Higgins on the 25th day of July, 1909, in the county and circuit aforesaid, before the finding of this indictment, did unlawfully, feloniously, wilfully, maliciously and with malice aforethought, strike and wound Wm. Culbertson with a club or other heavy deadly weapon to the grand jury unknown, from which striking and wounding the said Culbertson died within a year and a day thereafter. The said Ferguson did the striking and wounding as aforesaid and his said co-defendant, Sarah Hill Higgins, was present and did unlawfully, wilfully, feloniously, maliciously and of her malice aforethought aid, abet, encourage and assist her said co-defendant Fred Ferguson in the commission of said crime."

The latter part of the charge is necessarily an explanation of the general words contained in the former part. The indictment as a whole charges that Ferguson did the striking and that Mrs. Higgins was present aiding and abetting him. But under such a charge she may be convicted if she did the striking which caused Culbertson's death. The precise question was before the court in Benge v. Commonwealth, 92 Ky., 1. In that case it was charged that Hampton did the deed, and that Benge was present aiding and abetting him. Holding under this indictment that Benge might be convicted of actually doing the cutting, the court said:

"The one charged as principal may be found guilty of aiding and abetting; and the one charged as aider and abettor may be found guilty as principal. This is for the reason that each is the agent and instrument of the

other, and his act is the act of the other, and the act of each constitutes but one crime, and each is guilty of the act actually committed by the other; such act is, in law, the act of each. Hence, each is principal as to each act, although he did not actually perpetrate each act; but the act that the other perpetrated was his act, and he is principal as to it."

That case was followed and approved in Reed v. Commonwealth, 125 Ky., 126, where a number of other authorities are collected.

So much of instruction 2 as told the jury that if the defendant struck and murdered William Culbertson in sudden heat and passion or in sudden affray, and thus killed him, they should find her guilty of voluntary manslaughter, should have been omitted. There was no more reason for giving an instruction on voluntary manslaughter in the case, than for giving one on involuntary manslaughter or self-defense. The defendant's proof showed that she was at home at Portmouth, Ohio, and knew nothing about the injury to Culbertson. She denied making the threats against him or the confessions shown by the Commonwealth. There was nothing to show a struggle or combat. If the Commonwealth's evidence was true, Culbertson was murdered in pursuance of a deliberate plan formed by the defendant. She was either guilty of murder or was innocent. This court has held that where the evidence is wholly cirmustantial, and there are signs of a struggle or other circumstances supporting such a conclusion, the court should give to the jury the whole law of the case including the law of murder, voluntary manslaughter, involuntary manslaughter and self-defense; but this rule does not apply where there is nothing in the evidence to show voluntary manslaughter, involuntary manslaughter or self-defense, and where from all the proof, if the offense was committed, it was murder. (Bast v. Commonwealth, 124 Ky., 747; Marshall v. Commonwealth, 141 Ky., 222.)

Judgment reversed and cause remanded for a new trial and for further proceedings consistent herewith.