## Abshire v. Commonwealth.

(Decided September 28, 1926.)

### Appeal from Pike Circuit Court.

1. Homicide—In Prosecution for Murder by Blow on Head with Club, Omission of Instruction on Involuntary Manslaughter Held Not Error.—In prosecution for murder, omission of instruction on involuntary manslaughter held not error, where defendant, using part of spring pole of wagon as club, hit deceased on head.

2. Criminal Law.—In prosecution for murder evidence held sufficient to show that exhibited pieces of deceased's skull were produced by blow struck by defendant.

3. Criminal Law.—Where it was undisputed defendant killed deceased by blow on head with club, exhibition of pieces of deceased's skull, if incompetent, held not prejudicial in murder prosecution.

4. Criminal Law.—Objection to identification of club used by defendant in killing deceased held without merit, where defendant admitted that such club was one he used.

5. Criminal Law.—Exhibit found at such time and place as to furnish reasonable ground to connect it in some way with homicide is competent.

6. Homicide.—Five years and one day in penitentiary held not excessive punishment for voluntary manslaughter, and did not show passion and prejudice of jury, in view of evidence.

PICKLESIMER & STEELE for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

Appellant, Columbus Abshire, at his trial in the Pike circuit court on an indictment charging him with murder-

ing Milliard Anderson, was convicted of the crime of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for five years and one day. His motion for a new trial was overruled and he has appealed, urging as grounds for reversal: (1) Error of the court in failing to properly instruct the jury, (2) incompetent evidence for the Commonwealth admitted over his objections and exceptions, and (3) that the punishment is excessive and is the result of passion and prejudice on the part of the jury. A brief statement of the facts as testified to by the prosecuting witnesses and by defendant and his chief witness, is necessary to an understanding of the points argued.

The killing occurred on a railroad track in the late afternoon about dark and while defendant and his witness were on their way to Elkhorn City to attend, as they say, a lodge meeting of the Odd Fellows of which they were members. Some small distance before arriving at the scene of the killing and as they approached the mouth of a branch they heard some quarreling and swearing by persons coming down the branch, and when they arrived at that point the deceased and his brother, Zeke Anderson, came upon the railroad track and they were both considerably intoxicated and quarreling with each other. They were threatening to do each other harm, though it was not shown that they were armed, and defendant and his companion attempted to quiet them and a small fight ensued in which some rocks were thrown and defendant and his companion were each struck. They then continued on their journey with the two Andersons following and they were cursing and, according to the preponderance of the testimony, deceased was breathing threats against defendant and his companion for their interference at the branch and said that he would shoot them, although, as stated, there was no evidence that he was armed. While traveling along and before arriving at a certain coal tipple defendant found, lying upon or near the railroad track, an abandoned spring pole for a wagon. He picked it up and placed one end under a rail of the track and broke it, making two pieces. He offered one of them to his companion and kept the other himself. By that time deceased and his brother had practically overtaken defendant, who was considerably to the rear of his companion. What occurred at that point, as shown by the Commonwealth through the testimony of Zeke An-

derson, was: "I was going around the car (which was stationed on a side track under the tipple) and someone hit me and knocked me down and Milliard Anderson fell across me and I looked up and Columbus Abshire was hitting Milliard Anderson, and I said 'Don't do that,' and I raised up and he knocked me down again and I got up and I heard someone struggling and he (Milliard Anderson) was laying there and I straightened him around and I went up to the house," etc. As to what occurred immediately at the time of the killing and upon the same occasion to which the quoted testimony of Zeke Anderson related was thus told by defendant: "They got up pretty close and while he was coming towards me, I was getting my stick, they was coming up between the main line and the passing track and they came up pretty close and I said, 'Stop,' and Milliard started across the track and I hit Milliard and then Zeke made for me and I struck him." The blow was across the top of the head of deceased and produced a wound some four or five inches in length and crushed the skull, eventually resulting in death.

1. Under ground (1) above, it is argued that the duty of the court to give in criminal prosecutions the whole law of the case whether requested or not required in this case an instruction on involuntary manslaughter under the evidence which we have related, and in support of that contention the case of Thomas v. Commonwealth of Kentucky, 27 K. L. R. 794, and two other less applicable ones are relied on. Those cases hold that where there is any evidence from which it might reasonably be concluded that the homicide did not amount in law to a felony but only the misdemeanor of involuntary manslaughter, it is the duty of the court to so instruct the jury. In the Thomas case defendant was fighting his wife with his fists and feet and the wounds inflicted resulted in her death, and because of the means by which the death was produced, and under the facts and circumstances of that case, the court held that it was the duty of the court to instruct on involuntary manslaughter, upon the theory that there was evidence from which the jury might find that the defendant did not intend to produce death, nor were his acts such as were calculated to produce that result, and the opinion was eminently correct in so holding. Unlike the instant case there was no weapon of any kind used by defendant, and which from

its very size and nature was calculated to produce death when used in the manner that defendant did the club in this case. It is, therefore, clear to us that this ground is without merit.

2. The incompetent testimony relied on under ground (2) was (a), that given by the father of deceased in exhibiting at the trial pieces of the skull of deceased, and (b), that the stick or club used by defendant and introduced at the trial was not properly identified. In support of division (a), it is insisted that the father of deceased who exhibited pieces of his son's skull at the trial did not sufficiently establish the fact that they were produced by the lick struck by defendant. But we are not so convinced. The testimony complained of on this point was: "Q. Was there any bones that came out of his head? A. Yes, sir. Q. Are they in the same condition now that they was when they were taken out? A. Yes, sir. Q. Will you show them to the jury? A. Yes, sir." There is no intimation that any bones came from the skull of deceased as the result of any other wound, and the reasonable and practically only inference is, that the exhibited bones came from the skull of deceased as a result of the wound produced by defendant. Moreover, it is undisputed that defendant struck deceased on the head which produced his death, and even if the exhibition of the bones was incompetent it could not materially affect the verdict, and would not, therefore, be prejudicial.

It is insisted in support of division (b) that the exhibited club was not sufficiently identified, but we are also unable to agree with that contention. The club was positively identified by Zeke Anderson as being the one used by defendant at the time of the homicide. It was found early the next morning at the place where the blow was struck and from which the body of deceased was removed. Moreover, the defendant, who testified after the club had been introduced by the Commonwealth, in telling how he procured it while walking up the railroad track, said, "We was going up the side of the track and I seen *this* stick and I picked it up and I stuck it under the track and broke it in two and they was following us," etc. It will be seen that he referred to a definite stick, which his testimony indicated was then and there present and which is susceptible to no other construction than an admission on his part that the stick which had

theretofore been introduced by the Commonwealth was
the one he had and used on the fatal occasion. It would,
therefore, seem to appear that there is positively no
room for this contention, and because of that fact it is
equally apparent that we need spend no time in pointing
out the adjudged practice with reference to the identifi-
cation of such exhibits, nor discuss any of the cases relied
on to obtain an exclusion of that testimony, further than
to say that if the exhibit is found at such a time and place
as to furnish reasonable grounds to connect it in some
way with the homicide it is competent for whatever it is
worth, the jury considering the doubt as to its positive
identity. Higgins v. Commonwealth, 142 Ky. 647.

3. In discussing this ground but little need be said.
According to the proof for the Commonwealth the homi-
cide was wholly unjustified, and it is exceedingly doubt-
ful if the testimony of the defendant himself authorized
an acquittal under his right of self-defense. He does not
pretend that at the time he struck the fatal blow that
either deceased or his brother had a weapon of any kind,
nor were they armed with a club or other instrument with
which they could inflict death or bodily harm. Neither
does he show that at that time they were threatening or
attempting to do so. At best they were only approach-
ing him and refused to obey his admonition to "stop"
when he struck both of them with the club that he had
obtained in the manner indicated, severely wounding
Zeke Anderson and killing his brother. They were both
at that time in an advanced state of intoxication and de-
fendant knew it. The slightest inclination on his part to
preserve the peace and to avoid the shedding of blood
would have prompted him to have continued his journey,
which if done in a moderate walk would have been much
faster than the deceased and his brother were traveling
in their maudlin condition and thereby gotten entirely
out of their way, as did his companion and another who
was with them at the time when the parties first met at
the mouth of the branch. Instead he consumed time in
arming himself with the club and when the two Ander-
sons overtook him because of his delay so occasioned he
assaulted both of them, and killed one of them. We think
he has no right to complain that the jury refused to ac-
cept his plea of self-defense, and this ground is also with-
out merit.

Wherefore, the judgment is affirmed.