## People's National Fire Insurance Company v. Jackson.

(Decided October 7, 1913).

### Appeal from Hickman Circuit Court.

1. Insurance, Fire—Forfeiture Clause for Non-occupancy—Agent—Waiver.—A clause in a fire insurance policy avoiding the policy for non-occupancy may be waived by the conduct or parol agreement of the agent who solicits the insurance, collects the premiums and delivers the policy, although the policy provides that it can be done only by agreement endorsed thereon and added thereto. .

2. Insurance, Fire—Forfeiture Clause for Non-occupancy—Waiver—Evidence.—In an action on a fire insurance policy, evidence of waiver by company's agent of a clause avoiding the policy for non-occupancy examined and held sufficient to sustain a finding in favor of plaintiff. .

3. Instructions—Assumption of Fact.—Where an unimpeached witness testifies that she is the agent of her mother, and there is no direct testimony or fact tending to show the contrary, it is not error, in instructing the jury, to assume the fact of agency.

W. J. WEBB for appellant.

BENNETT, ROBBINS & THOMAS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On June 7, 1911, the defendant, Peoples National Fire Insurance Company, issued to plaintiff, Mrs. L. W. Jackson, a policy of insurance insuring her dwelling house in North Clinton, Kentucky, against loss or damage by fire, in the sum of $1,500. The house was destroyed by fire on October 12, 1911. The defendant declined to pay the insurance, and plaintiff brought this action to recover on the policy. The trial resulted in a verdict and judgment for plaintiff, and defendant appeals.

The policy in question contains the following provision:

"This entire policy, unless otherwise provided by agreement endorsed hereon and added hereto, shall be void * * * if the building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied, and so remain for ten days."

It appears that the house in question was occupied by a tenant. On August 24, 1911, the tenant moved out, and the house remained vacant until destroyed by fire on October 12, 1911. Defendant relies on the vacancy clause to defeat the policy, while plaintiff insists that the vacancy clause was waived by defendant's local agent, who solicited the insurance, wrote the policy, collected the premiums, etc.

The evidence shows that Henry Jackson and his sister, Della Jackson, were looking after the insurance for the plaintiff, who is their mother. The morning after the house was vacated, Henry Jackson went to see the defendant's local agent and told him that the tenant had moved out, and that he wanted the policy to still stand good until he could get a tenant. The local agent said that was all right, and told him to go ahead and get a tenant as soon as he could. About a week or ten days later Henry Jackson again met the local agent and told him that he had not then gotten a tenant for the house. The local agent again told him that was all right; to go ahead and get one as soon as he could. On two or three subsequent occasions Henry Jackson had substantially the same conversation with the local agent. Henry Jackson also told the agent that rather than let the policy lapse, he would move into the house himself. The agent told him that was all right; that the policy would stand in full force. Della Jackson also saw the local agent about three days after the house was vacated. She told him that she wanted the policy to remain good until they could get somebody in the house. The agent said that was all right; that he had seen Henry. The agent also met her just a few days before the fire, and asked her if they had gotten anybody in the house. She told him that they had not gotten anybody yet, whereupon he said: "When you do, let me know." She told him she would.

The local agent testified that the second time he saw Henry Jackson, Henry said that he had not been able to get a tenant. Thereupon he issued a vacancy permit in triplicate. One copy of the permit was forwarded to the company, another attached to the register, and the other left for Henry Jackson whenever he called for it.

He did not call for it until after the fire. The vacancy permit was good for only thirty days, and for only three-fourths of the amount of the insurance. The impression left on witness from what Henry Jackson said was that Henry was going to get somebody in the house, and that if he did not get somebody, he would move in himself. He issued the thirty-day permit under these circumstances. On cross-examination witness stated that Henry Jackson did not see him write the permit, and did not see the permit until after the fire. Henry Jackson was recalled, and testified that he was not informed of the issuance of the thirty-day permit, and did not learn of it until after the fire. He further denies that the local agent ever said anything to him about the insurance being reduced.

While it is true that a vacancy clause in an insurance policy is held to be binding, it is also true that the agent who takes the application, issues the insurance, receives the premiums and delivers the policy may, by his words or conduct, waive such provision, although the policy provides that it can only be done by writing, endorsed on the policy. Berner's Admr. v. German-American Insurance Co., 103 Ky., 373; Mattingly v. Springfield Fire & Marine Insurance Co., 120 Ky., 768; New Orleans Insurance Co. v. O'Brien, et al., 8 Ky. L. R., 785; Phoenix Insurance Co. v. Spiers & Thomas, 87 Ky., 285. The rule in such cases is that if the agent, when approached, simply tells the assured to bring in the policy and he will make the indorsement, there is no waiver of the condition, but if he says it is all right, or makes use of any expression indicating satisfaction with the change, without requiring compliance on the part of the assured with the terms of the policy, a waiver is established. Mattingly v. Springfield Fire & Marine Insurance Co., *supra.*

If the evidence for plaintiff be true, it is manifest that under the foregoing rule there was sufficient evidence on the question of waiver to take the case to the jury, and it cannot be said that their finding is flagrantly against the evidence.

The instructions presented the theory of each side to the jury, telling them in the one case to find for the plaintiff, and in the other to find for the defendant. The only real complaint made of the instructions is that instruction No. 1 assumes that Della Jackson was the agent of her mother. Miss Jackson testifies that, by di-

rection of her mother, she was looking after her mother's business, and particularly the house and policy in question. There being no direct evidence or any circumstance tending to show the contrary, and she not having been impeached in any manner whatsoever, the court did not err in assuming that she was her mother's agent.

Judgment affirmed.