## Ratliff v. Commonwealth.

(Decided November 29, 1918.)

### Appeal from Perry Circuit Court.

1.  Indictment and Information—Requisites and Sufficiency.—An indictment for the crime of murder can charge, but one offense, but, in describing how the crime was committed, the pleader may describe the manner of its commission, in as many different ways as may be necessary to present the case, and to meet the testimony of the different witnesses, and facts proven.

2.  Indictment and Information—Requisites and Sufficiency.—Each count in an indictment for murder, where there are more than one count, must contain a statement of facts, which will constitute the crime of murder, and make a good indictment for that crime, when read with the charge of murder preferred in the accusative portion of the indictment.

3. Indictment and Information—Charging Several Persons with Murder.—Where several persons are accused in the same indictment of the crime of murder, and all are charged with the crime in the accusative part of the indictment; each of them, in a separate count, may be charged as having done the killing, or as a principal in the first degree, and the others with being aiders and abetters, or principals in the second degree, and such an indictment charges the commission of but one offense.

4. Indictment and Information—Demurrer.—Where an indictment improperly charges the guilt of more than one offense, the remedy is a demurrer to the indictment, when, if the prosecutor will dismiss the charge as to one of the offenses, the demurrer should be overruled, otherwise it will be sustained.

5. Criminal Law—Witness of Kin to Juror.—The fact, that a disinterested witness, is of kin to one of the jurors, in a criminal trial, does not disqualify the juror, and is not a sufficient ground to justify the discharge of the jury, or the setting aside of the verdict.

6. Criminal Law—Circumstantial Evidence.—When a conviction for murder is sought upon circumstantial evidence, solely, and when no witness, who was introduced upon the trial, saw the homicide committed, or saw the parties after they met upon the occasion of the killing, it is proper to give to the jury, the law applicable to murder, manslaughter and self-defense, in order to meet any state of fact, which the jury may find to have existed.

7. Criminal Law—Instructions.—It is not error to fail to embrace in the instructions a defendant, in a joint indictment for murder, upon the separate trial of one of the parties, where the evidence fails to show that such defendant had any connection with the commission of the crime, as the instructions must be based upon the evidence, as well as the pleadings.

8. Criminal Law—Admissions.—An admission, in a criminal case, is a statement of the defendant, which does not directly involve an acknowledgment of guilt or criminal intent, while a confession is generally restricted to an acknowledgment of guilt.

9. Criminal Law—Confession—Instructions.—Where the *corpus delicti*, is clearly proven by other evidence, independent of the proof of a confession, an instruction need not be given as provided by section 240, Criminal Code, but, if the proof, other than of the confession, leaves it doubtful, whether the crime has been committed, an instruction should be given in accordance with section 240, *supra*.

10. Criminal Law—Inferences.—Statements by the accused, although they do not amount to a confession, but from which an inference of guilt may be drawn, when considered in connection with other circumstances proven, are admissible against an accused, if freely and voluntarily made by him.

11. Criminal Law—Submission to Jury.—In a criminal case, where there is any evidence of the guilt of the accused, the issue should be submitted to the jury.

12. Criminal Law—Appeal and Error.—The verdict of a properly in-
structed jury, on a question of fact, will not be interfered with
upon appeal, unless the verdict is so flagrantly against the evi-
dence as to make it appear, at first blush, that the jury was in-
fluenced by passion and prejudice.

H. C. FAULKNER and W. A. STANFILL for appellant.

CHARLES H. MORRIS, Attorney General, O. S. HOGAN, Assist-
ant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, John Ratliff, together with Rude
Wooten, Nannie Wooten and Bud Couch, was in-
dicted, in the Perry circuit court, and accused
therein of the willful murder of John Baker. Hav-
ing been brought to trial, he was found guilty
by the jury, which fixed the punishment to be imposed
upon him for the crime, at death. His motion to set aside
the verdict and grant him a new trial having been over-
ruled, the trial court adjudged him to be guilty of mur-
der, and to be punished with death, in accordance with the
verdict of the jury, and in the manner prescribed by,
law, in such cases. He has appealed from the judgment,
and seeks its reversal, because, as is contended, the trial
court erred to his prejudice:

(1)  By overruling a demurrer to the indictment, as
a whole.

(2)  By overruling a demurrer to the second, third
and fifth counts of the indictment.

(3)  By overruling the motion of appellant to require
the Commonwealth's attorney to elect, upon which count
of the indictment, he would rely for a conviction.

(4)  By overruling appellant's motion, made during
the trial to discharge the jury, and to continue the case,
or to empanel another jury, for the trial.

(5)  By misinstructing the jury and failing to in-
struct the jury, as to the entire law of the case.

(6)  By the admission of incompetent evidence, over
appellant's objection.

(7)  By overruling appellant's motion to direct the
jury to find him not guilty, and because the verdict was
caused by passion and prejudice. The above contentions
will be considered, in the order, in which they are stated.

(a)  The indictment, in its accusative part, charges
the appellant, Rude Wooten, Nannie Wooten and Bud

Couch, jointly, with the crime of willful murder, which it alleges, was committed by them, in manner and form, as is set out in five separate counts. In the first count, the manner of committing the murder is alleged to have been, that appellant, Rude Wooten, Nannie Wooten, and Bud Couch conspired for the purpose of killing and murdering one John Baker, and in pursuance to the conspiracy and while it existed, they killed and murdered Baker, by cutting him with knives and striking him with stones, from the effects of which, Baker instantly died. In the second count, it is alleged that the murder was committed, by Rude Wooten as the principal, in the first degree, and by appellant Nannie Wooten, and Bud Couch as principals, in the second degree, by being present at the time and place of the killing of Baker, and aiding and abetting Rude Wooten in doing the killing. The third count alleges that Nannie Wooten did the killing, and that appellant, Rude Wooten and Bud Couch were aiders and abettors. The fourth count charges, that appellant killed Baker, and that Rude Wooten, Nannie Wooten and Bud Couch were aiders and abettors, while in the fifth count, it is alleged, that Bud Couch killed Baker, and that appellant, Rude Wooten and Nannie Wooten aided and abetted him in so doing. The indictment fully complies with the requirements of sections 122 and 124, Criminal Code, in that the title of the prosecution, the name of the court, and the names of the parties are clearly specified, and it contains, "A statement of the acts constituting the offense, in ordinary and concise language and in such a manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment on conviction, according to the right of the case." It is likewise, direct and certain as regards the party charged, the offense charged, the venue, and the circumstances necessary to constitute the offense. Under section 126, Criminal Code, an indictment for murder, can charge but one offense, but, in describing how the offense was committed, the pleader may, describe the manner of its commission in as many different ways as may be necessary to present his case, and to meet the testimony of different witnesses, and circumstances proven. Each count, however, must contain a statement of facts which will constitute the crime of murder, and the statement of facts in the count, is read with the

charge of murder preferred in the accusative portion of the indictment. Hence, where several persons are indicted for murder and after a charge of guilt of the crime is made against all, in the accusative part of the indictment, the manner and form of its commission may be set out in different counts, one or more may be charged with having done the killing and the others accused, with being aiders and abettors. An indictment of this kind is not subject to criticism for duplicity, and but one offense is charged, although, the manner of its commission is set out in different modes. Com. v. Hargis, 124 Ky. 356; Thompson v. Commonwealth, 1 Met. 13; Angel v. Com., 14 R. 10; Cuff v. Com., 87 Ky. 35; Hawood v. Com., 110 Ky. 356; Benge v. Com., 92 Ky. 1; Mulligan v. Com., 84 Ky. 229; Taylor v. Com., 28 R. 821, 90 S. W. 581; May v. Com., 153 Ky. 141; Anderson v. Com., 144 Ky. 215. In the instant case, the indictment charges but one offense, and that is the murder of John Baker, and in the accusative part of the indictment appellant, Rude Wooten, Nannie Wooten and Bud Couch are charged with the crime of murder, but each of the five counts, alleges it to have been committed by them, in a different mode. The fact, that the pleader unnecessarily, in the second, third, fourth and fifth counts, again alleges, that the one accused, as the principal, in the first degree is guilty of murder, does not make the indictment bad for duplicity, as charging another offense, as the indictment charges but one offense, and the reiteration is but surplusage, which never renders an indictment insufficient. The allegations in each count, relate to and must be read with the charge of murder made in the accusative part of the indictment. A person of ordinary understanding could not fail to understand that the indictment charges the appellant with the crime of willful murder, and committed, in one of the following modes:

(1)   Jointly with Rude Wooten, Nannie Wooten and Bud Couch.

(2)   As an aider and abettor of Rude Wooten.

(3)   As an aider and abettor of Nannie Wooten.

(4)   As a principal in the first degree, with the Wootens and Couch aiding and abetting him.

(5)   As an aider and abettor of Bud Couch.

In either state of case, he would be guilty of murder. The demurrer to the indictment as a whole was therefore properly overruled.

(b) For the reasons above given, the demurrers to the second, third and fifth counts of the indictment were properly overruled, as each of the counts contained a statement of all the facts necessary to constitute the crime of murder, on the part of appellant and each of the counts made a valid indictment for that crime, when read with the accusative portion of the indictment, as it should be.

(c) The motion to require the Commonwealth's attorney to elect upon which count of the indictment he would rely for conviction, was necessarily overruled. Such a motion could not have any merit, unless the indictment charged guilt of more than one offense. To require the prosecutor, where the modes of committing the crime alleged, are set out in different counts, to rely for conviction upon the manner set out in one particular count, would defeat the very purpose for which it is permitted to set out the different modes, in which the crime may have been committed, in different counts. The proper practice, as prescribed by the Criminal Code, sub-section 3, of section 165, where more than one offense is improperly charged in an indictment, is a demurrer to the indictment. If the indictment, improperly, charges more than one offense, and the Commonwealth's attorney will dismiss one of the charges, the demurrer is then overruled, otherwise it is sustained. Hence, if the indictment charges only one offense, there is no basis for a demurrer upon that ground.

(d) During the course of the trial, and after a witness for the Commonwealth had testified, in chief, the appellant and his attorney learned, that the witness was a niece of one of the jurors, who had been selected for the trial of the action. They, immediately, prepared and filed their joint affidavit, which stated in substance that they were ignorant of the fact, that the juror was related to the witness at the time, the juror was accepted, and had just learned of such relation, and that if they had known such fact when the juror was accepted, they would have challenged him for cause and peremptorily and moved the court to discharge the jury and to empanel another jury, or else continue the action. This

motion was overruled, and appellant complains of it as a prejudicial error. It is insisted, that the witness, at the time and place, at which she observed the facts, about which she testified, was there for the purpose of engaging in lewd conduct with two men, and was guilty of so doing, and that the attorney was embarrassed in bringing out these facts before the jury for fear that it might cause resentment on the part of the juror, who was related to her. The bill of exceptions, however, shows that all of the facts touching the conduct of this witness, upon that occasion, and detrimental to her character, for chastity as well as other degrading habits of the witness, were fully brought out upon the cross-examination by the attorney for appellant, and the record indicates, that, in every way, he did his entire duty by his client, in an able and skillful manner. Attention has not been called to any precedent, which authorizes the discharge of a jury during the progress of a trial, or the setting aside of a jury's verdict, on account of a witness, having no interest in the result of the trial, who testified for one side or the other, being related by consanguinity or otherwise to one of the jurors. Such a practice, in the older communities of this state, would result in much inconvenience and in many mistrials, as oftentimes it could not be known until after a trial of the relationship of a witness to a juror. The further fact that during the past century, the judiciary has never felt the necessity of affording relief to a defeated litigant, on account of the relationship of a witness to a juror, nor the legislative department of the government has never provided relief for any such contingency, militates very strongly against the contention, that the relationship of a disinterested witness to a juror, may result in any prejudice to a litigant. The witness, in the instant case had no interest in the result of the trial and no statement made by her was contradicted by any one, and as far as the record indicated, she had evinced no interest in the case. In the instances in which the question under consideration has been considered by this court, it has held that the fact that a witness was of kin to a juror did not disqualify the juror, and that such fact was not a ground for setting aside the verdict of a jury. Stewart v. L. & N. R. R. Co., 136 Ky. 717; Wright v. Commonwealth, 155 Ky. 150.

(e) The murder for which appellant was convicted, occurred in a graveyard, upon the top of a hill, which overlooked the town of Hazard. There was no eyewitness to the homicide, and the evidence upon which appellant was convicted, all consisted of the proof of certain circumstances. The victim was a young man, and so much a cripple, that he walked peculiarly and with difficulty, and as though he suffered with paralysis of the hips. Early of a morning in the month of August, his body was found upon the top of the hill. Five or six severe wounds were upon his throat, which were evidently made by a knife, and as a witness described it, "his throat was cut five or six times." He was lying upon his face and a number of stones of various sizes were lying upon and about him. His head, and especially his ears, showed evidences of having been beaten and bruised, as though with stones or other heavy articles. He was without a coat, in his shirt sleeves, and his cap was lying a few yards from his body. One of his pockets was turned out and a dime, in money, still remained in it. In the direction from where the body lay to his cap, there were found a dime, a nickle piece and a one dollar bill, which had a splotch of blood upon it. There were drops of blood along the way from the body in the direction of the place where his cap was lying, and near thereto, the leaves upon the ground, and other trash, were disturbed in a way to indicate that a struggle had there taken place. By the side of a cedar tree, lay an open knife which was covered with blood, and the imprint of bloody fingers were upon the tree. Very near the same place, there was found within the enclosure around a grave, an article which the witnesses described as being a "slung shot" or "billy" or "black jack," but the exact character of which the evidence does not clearly demonstrate. The covering upon this was of cloth, and appeared, as if some one had wiped a bloody hand upon it. A piece of cloth, which seemed to have been torn from the dress of a woman, was also, found near this place. A few minutes after 10 o'clock p. m. the evening before, persons in Hazard heard two loud, distressful cries, which seemed to proceed from the direction, where the dead body was found, and another who lived about two hundred feet from the graveyard, about the same hour, heard a voice, in that direction, pleading that his

life be spared. Baker was seen to have a roll of bills, which the witness estimated to be as much as fifty dollars, late on the afternoon before his death. About nine o'clock in the evening, and about an hour or a little over before the cries were heard from the hill, Baker and appellant were seen by two different persons, together upon a bridge, which is on the opposite side of the court house in Hazard, from the graveyard hill, and while there Baker said to appellant, "Let's go down yonder and get some tobacco before we go." Between nine and ten o'clock, a woman testified, that she had partly ascended the graveyard hill, and was waiting there beside the street for two men, with whom she had an appointment at that place, when two men, whom she thought to be Rude Wooten and the appellant, passed near her, going toward the top of the graveyard hill, and about the time these two men, would have had time to reach the top of the hill, a man and a woman passed near her going in the same direction, as the two men, went toward the top of the hill. The woman she thought to be Nannie Wooten, and the man, with her, was without a coat, wearing a cap and walked badly as though crippled. This witness was well acquainted with Rude Wooten, Nannie Wooten and appellant. When this witness went near the top of the hill, Bud Couch passed her, going up the hill, but in a few minutes came running down the hill, and joined some women in the street and went on his way. The witness remained on the hill from thirty to forty-five minutes, when she came down into the town and there met a witness, who fixes the time at which he met the woman on the street at a little after ten o'clock and within a few minutes thereafter, the screams were heard from the top of the hill, and begging by some one to spare his life. The bloody knife, which was found, near the dead body of Baker, was proven to have been a pocket knife, which appellant owned and carried, previous to the tragedy, and there was evidence to the effect that the "billy" or "slung shot" which was found near the body, with blood upon it, was the same or very similar to an article which appellant had in his possession before the tragedy. After the indictment of appellant, he made a motion to be granted bail before the county judge, and on that hearing, he testified, that the knife found near Baker's body was his knife, but, that on the evening be-

fore the murder, about seven o'clock, he was on the bridge at Hazard, when Rude Wooten asked him to loan him the knife, which he did, and that he saw it no more. Lay Frisbee was present when the loan was made. John Baker and Nannie Wooten had just passed and he and Frisbee concluded that they would watch them. They saw Rude Wooten and Will Stout get together, and Rude and Stout went up the hill, and just behind them Baker and Nannie Wooten went up the hill. Appellant and Frisbee followed on and concealed themselves to hear what Baker and the girl said, but directly they began to quarrel, when Rude Wooten and Will Stout came to where Baker and the girl were and then appellant and Frisbee ran off. The reason, that he had not told before this, was that he was afraid of the Wootens. Taylor Bingham testified, that the appellant, after he was indicted, said to him that some of the parties were in jail who had killed Baker, but that one of them was not, and that he was going to tell who were there; that the knife found there was his, but that it had been borrowed from him some time before the killing, and "they know who I let have the knife," and that he was not guilty.

The court instructed the jury in substance, that if appellant feloniously, willfully and of his malice aforethought killed Baker, or if Rude Wooten or Nannie Wooten killed Baker, and appellant was present and willfully, feloniously and of his malice aforethought aided or abetted the one so killing Baker, to find him guilty of murder. Other instructions authorized the jury to find appellant guilty of manslaughter, if he killed Baker in sudden heat of passion or in sudden affray, and not in self-defense, and without previous malice, or aided or abetted Rude or Nannie Wooten in doing the killing, if he aided and abetted them in sudden affray, or in sudden heat of passion, without previous malice, and not in his or their self-defense. The jury was also, directed to find him not guilty, if he killed Baker, in his necessary self-defense, or the necessary self-defense of Rude or Nannie Wooten. The jury was directed to find him not guilty if it had a reasonable doubt of his guilt; or if he was guilty of murder or manslaughter, but it had a reasonable doubt of which, to find him guilty of the lesser offense. It is contended that the court erred to appellant's prejudice, in instructing the jury to find him guilty, if Rude or Nannie Wooten killed Baker, and he aided or abetted

them, for the reason, that there was no evidence upon which to base such an instruction, because there was no evidence tending to prove that either Rude on Nannie Wooten killed Baker, and hence, it was error to authorize a conviction of appellant, for aiding or abetting another, who was not proven to be guilty. It is, also, insisted that the instruction upon the subject of manslaughter should not have been given, because of the absence of any evidence tending to prove, that the homicide was a manslaughter. In instructing the jury, touching the law of a homicide, the same rule does not apply to cases, where the evidence is all circumstantial, as applies when there are eyewitnesses. In the instant case, the evidence is entirely circumstantial. However, the fact that a very short time before Baker met his death, Rude Wooten was seen going upon the hill in company with appellant, and a few paces behind them, a man whom the description tends to prove was Baker and Nannie Wooten was seen ascending the hill, and that no other persons are proven to have been upon the hill, at the time, is evidence tending to prove their connection with the murder. The evidence of a struggle having occurred at the place where Baker's body was found, was evidence from which it might be inferred, that the killing was done in sudden affray and not deliberately, or done in self defense, and justified the giving of the law applicable to manslaughter and self-defense. Further, the rule, which prevails, when a conviction for a homicide is sought solely upon circumstantial evidence and when no witness, who was introduced upon the trial, saw the homicide committed, or saw the parties after they met on the occasion of the killing, the law applicable to murder, manslaughter and self-defense, should be given in order to meet any state of fact, which the jury may find to have existed. Rutherford v. Com., 13 Bush, 608; Ratchford v. Com., 16 K. L. R. 411.

The appellant contends, that the court should have instructed the jury in reference to the proof of his testimony before the county judge and the proof of his statements to Taylor Bingham, as is provided for by section 240, Criminal Code. That section of the Code provides: "A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

The proof of the statements by appellant before the county judge was made by the county judge. It will be observed, that the statements made before the county judge, and those made to Bingham, were neither of them confessions of guilt of the crime by the appellant. The statements were damaging admissions, by appellant, but not confessions within the meaning of the section of the Code. In fact, they were denials of his guilt altogether. A distinction is drawn between an admission and a confession. An admission in a criminal case, is a statement which does not directly involve an acknowledgment of guilt or a criminal intent, while a confession is generally restricted to an acknowledgment of guilt. 12 Cyc. 418; Wright v. Com., 155 Ky. 750. Where a confession by an accused is proven, the rule relating to instructing the jury, in regard to it, as provided in section 240, Criminal Code, is, if the *corpus delicti* of the crime is clearly proven by other evidence, independent of the proof of the confession by the accused, an instruction will not be given in accordance with section 240, *supra,* but, if the proof other than that of the confession, leaves it doubtful whether the crime has been committed, then the instruction should be given, as provided by section 240, *supra.* The *corpus delicti,* in the instant case, was clearly proven by evidence, other than the admission to the county judge and Bingham. There could be no doubt, from the circumstances proven, that Baker had been murdered, and by no possibility, could it be imagined, that he came to his death by any means, other than criminal violence, at the hands of some one. Clay v. Com., 163 Ky. 55; Wiggington v. Com., 92 Ky. 282; Dugan v. Com., 102 Ky. 252; Gilbert v. Com. 111 Ky. 798; Higgins v. Com., 142 Ky. 647.

It is likewise, contended, that the court erred in the instructions, in failing to authorize a conviction of appellant if Bud Couch killed Baker, and appellant aided and abetting him in so doing, and, also, in failing to direct his acquittal, if appellant took the life of Baker, in the necessary self-defense of Couch. It is insisted, that there is as much basis, under the evidence, for the belief that Couch participated in the murder, as there is that Rude or Nannie Wooten was an actor. The evidence, however, does not support this contention. Instructions must be based upon the pleadings and the evidence. The

indictment alleged that Bud Couch was guilty of partic-
ipating as a principal in the murder of Baker, but, the
evidence entirely fails to support the indictment as to
Couch. The only evidence which tends in any way, to
connect him with it, is that of the witness, who testifies,
that after appellant, Rude Wooten, Nannie Wooten and a
man filling the description of Baker, were seen to go
upon the hill, where the murder was committed, that
Couch was seen to ascend the same hill, in the same di-
rection, but before the time of the killing of Baker, as
shown by the evidence, the same witness deposes, that
Couch descended from the hill and went away.

(g)   The appellant insists, that the admission proven
by the county judge and Bingham, having been objected
to, should have been excluded, from the jury. State-
ments by the accused, although they do not amount to a
confession, but from which, an inference of guilt may be
drawn, when considered in connection with other circum-
stances proven, are admissible  against an accused, if
freely and voluntarily made.  12 Cyc. 418; Jackson v.
Com., 100 Ky. 239; Wright v. Com. 155 Ky. 750.  The ap-
pellant's testimony before the county judge was upon
his own motion for bail, where he was obliged to have
offered himself as a witness, and hence, it must be con-
clusively assumed, that he made the admissions freely
and voluntarily.  The statement to Bingham, who was
a private citizen, appears to have been made without
any inducement of advantage being held out to him or
duress of any kind imposed upon him.  Hence, it was
proper to admit the proof of the statements of appellant,
as proven by Bingham and the county judge.

(h)   The appellant at the close of the testimony,
moved the court to direct a verdict in his favor.  This
motion was overruled, and the appellant complains of
this ruling and, also, now insists that the verdict of the
jury is not sustained by the evidence and that the jury
was caused to make the verdict by the influence of pas-
sion and prejudice.  A reference to the statement of the
facts as proven by the evidence, dissipates any basis for
the contention that there was a failure of proof of facts
and circumstances, tending to prove the guilt of appel-
lant.  It is the doctrine, established by a continuous line
of adjudications, in this jurisdiction, that where there is
any evidence, however slight, of the guilt of the accused,

the case should go to the jury.  Johnson v. Com., 179 Ky. 40; Gordon v. Com., 136 Ky. 508; Ockeman v. Com., 176 Ky. 753; Barnes v. Com., 179 Ky. 725; Johnson v. Com., 170 Ky. 766; Little v. Com., 177 Ky. 24; Vowells v. Com., 83 Ky. 193; Patterson v. Com., 86 Ky. 313; Com. v. Murphy, 109 S. W. 353. It has been often written that in a criminal trial, it is the province of the jury, to determine from the evidence, what the facts are, and it is peculiarly so, where the evidence is circumstantial.  The jurors see and hear the witnesses, and can estimate the value and weight to be given to proven facts.  Though the witness, who proves that appellant went upon the hill, where Baker was directly slain, does not identify him with great positiveness as being the man whom she saw ascending the hill with Rude Wooten, the appellant admitted to the county judge, that he did go upon the hill, at the time, and there saw Baker, Rude and Nannie Wooten, and a quarrel was being engaged in.  The man, whom he says was present, when Rude Wooten secured his knife, and with whom he descended the hill, according to his admission, he does not call as a witness, nor account for.  He does not divulge the information, as to the loan of his knife to Wooten, nor what he saw or heard of the occurrence, until testifying upon his motion for bail.  That it was appellant's knife, found near the body, and covered with blood, there is no doubt. The throat of deceased was cut.  There was no contradiction in the testimony heard by the jury.  In Martin v. Com., 178 Ky. 443, the court said: "We have written in many cases, that we will not interfere with the verdict of a properly instructed jury, such as this, on a question of fact, unless it is so flagrantly against the evidence, as to appear at first blush, that the jury in making it, was influenced by passion and prejudice."  There is nothing to indicate, in the instant case, that the jury was influenced to any extent, by passion or prejudice, and, while the evidence is not so satisfactory as might be desired, and consists of the proof of circumstances and facts, the jury was the judge of their weight and value, and its verdict is not against the weight of the evidence, but in accordance with it.  The evidence is sufficient to sustain the verdict.

The judgment, therefore, must be affirmed.  All members of court sitting, Judge Sampson dissenting.