## Stegall v. Commonwealth.

(Decided March 3, 1931.)

JNO. M. THEOBALD for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

On a trial for the murder of George Thompson in the Carter circuit court, appellant, Jess Stegall, was convicted of voluntary manslaughter, and his punishment fixed at confinement in the state penitentiary for a period of ten years.

In his motion and grounds for a new trial, a number of alleged errors were assigned, but some of these seem to have been abandoned, and we shall only consider such alleged errors as are discussed and relied on for reversal, as indicated by brief of appellant's counsel, and these shall be discussed in the order in which they are treated in the brief.

It is first urged that the court erred in refusing to instruct the jury to find the defendant not guilty, and the disposition of this contention calls for a consideration of the evidence.

Jess Stegall, George Thompson, and a number of other men were employed by E. D. Patton, who was cutting and hauling timber from a tract of land in Carter county. At the time of this unfortunate tragedy, Stegall, Thompson, and others were engaged in snaking or skidding logs from the woodland where they were cut to a sawmill. So far as the evidence discloses, no one but Stegall and Thompson was present when the tragedy occurred. On returning to the mill with some logs, Ste-

gall informed others there present that he had struck Thompson in the head with a maul, and suggested that some of them should go and look after him; and he made a statement to a number of these witnesses that Thompson had attacked him with a knife, and indicated that he was forced to strike Thompson to prevent being cut and injured. Some of the parties proceeded to the woods where the difficulty occurred, and met Thompson on the way. They testified that he was staggering and seemed somewhat dazed. Thompson was taken to the home of a neighbor, where he died two or three days later.

Dr. J. M. Rose, who was immediately called to attend Mr. Thompson, testified as to the nature of the wound on his head above the right ear, stating that it appeared to have been made with a blunt instrument of some character. He testified that Thompson's death resulted from hemorrhage superinduced by this lick or injury on his head.

The defendant testified that he and three others went up into the woods to get some logs, and Mr. Thompson come up where he was; that he had driven one of his grabs in the front log and commenced to drive the other, having hit it one or two licks, when Thompson came up to him and stated that he (Thompson) was about to get fired off the job; that Bledsoe had threatened to fire him; and, continuing, the witness stated:

"I said George it is your own conduct, the way you have done; he said you are a damn liar; I said you are another one, I spoke back to him told him he was another one; right when I said that back to him he was just off a little piece from me, between me and his team. He drove his team up and stopped and come out pretty near to me. When he said that he walked back that way and I thought he went to his team. I went to drive my grab into the log—I had already drove one, I picked up my maul and the first thing I saw or knew of him he was right up over me on the log with his knife drawed in his hand, said I will settle with you right now; when I turned my eye up he had his knife drawed over me and I struck that way, hit right up; I was in this shape (indicating) and hit up left handed some where on the head best I could tell looked like about his ear some where, knocked him down. When I done that I

just picked up my chains and hooked the stretchers hooked them in my grabs and went on to the mill, went right down the hill and left Mr. Thompson laying there, he never spoke after I hit him.''

The defendant further testified that he struck because he believed he was in danger of death at the hands of Thompson.

Attorneys for appellant, on cross-examination, asked witness as to statements made by Thompson after the difficulty, and brought out evidence to the effect that Thompson stated that Stegall did not strike him on the head with a maul, but that he was struck by a limb, and that he and Stegall had no difficulty.

Appellant's attorney is earnestly insisting that defendant's evidence that he struck Thompson in self-defense is uncontradicted, and for that reason the court erred in refusing to give a peremptory instruction to find him not guilty.

In the case of Fleming v. Commonwealth, 219 Ky. 697, 294 S. W. 153, this court said:

"Fleming's admission that he killed Johnson required that he justify or excuse his act by evidence, and the sufficiency of this evidence was a question for the jury."

The Fleming case cites in support of the statement we have just quoted Simmons v. Commonwealth, 207 Ky. 570, 269 S. W. 732.

Appellant's attorney insists that the Fleming case does not apply here, because the facts in that case are in no wise similar to the facts in this case, but the principle stated in those cases applies here, even though there be a difference in the state of facts.

A jury of defendant's own county, and in whose selection he had a part, considered his evidence, in connection with the other proven facts and circumstances, and found him guilty; and we are not prepared to say that there was no evidence to support their verdict. It is a general rule that evidence, however slight, tending to show guilt, warrants the submission of the case to the jury. Levering v. Commonwealth, 132 Ky. 666, 117 S. W. 253, 136 Am. St. Rep. 192, 19 Ann. Cas. 140; Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497.

Incompetent evidence which is brought out on cross-examination, or which is permitted to be introduced without objection, will not be considered prejudicial; and without passing on the competency of the evidence as to statements of Thompson to the effect that he was struck by a limb and had no difficulty with Stegall, it is sufficient to say that this was brought out by defendant's counsel. So, in addition to the evidence of Stegall and the other facts and circumstances in the cases, the jury had before them this evidence as to Thompson's statement, which would indicate that he had no difficulty with Stegall and that he did not actually know Stegall had struck him with the maul.

Appellant's counsel further urges that there was no evidence as to the character of the maul with which Thompson was struck; but, in this, counsel is mistaken, as the maul was introduced in evidence while the defendant was on the witness stand.

On direct examination, the witness Jim Bryant was asked by the commonwealth's attorney whether or not there was feeling over the two boys, referring to sons of accused and deceased. The defendant's counsel interposed an objection to this question, but the witness was permitted to answer, and stated: "Uncle Jess had a boy been skidding logs for Mr. Patton and for some cause George Thompson laid the boy off, didn't have him on the job. In the meantime put his boy to work. That is about what Uncle Jess was sore about." This bit of evidence was incompetent, and, while objection was made to the question, no objection was made to the answer, and no request that it be excluded from the consideration of the jury.

In view of the presumption that jurymen are men of ordinary intelligence and understanding, it certainly could not be said that this evidence, though incompetent, could have misled them or had any weight in determining this verdict.

Appellant's counsel is here complaining of a remark of the court made in the presence of the jury. It appears that, when appellant's attorney asked the court for a directed verdict, the court made the following statement:

"You brought out that the deceased said a limb struck him on the head and there was no objection

to it; my way of looking at it, it was prejudicial to defendant.

"It is my way of looking at it; If I was arguing the case I would argue that point; I don't see why you brought it out; I think it is prejudicial to the defendant."

We see nothing in this statement to mislead or to prejudice the minds of the jury against the defendant or to cause them to return an improper verdict against him; but even though it should be considered prejudicial, no objection was made at the time, and no exception was taken to the statement of the court, and this question was raised for the first time in the motion and grounds for new trial; so it should not be considered on appeal. Hicks v. Commonwealth, 214 Ky. 86, 282 S. W. 777.

On direct examination, appellant was asked if he and Thompson were friends, and he replied in the affirmative, and the court sustained an objection to this evidence. Appellant's attorney is asserting that this, considered in connection with other alleged errors, was prejudicial to appellant. Appellant later testified on cross-examination that he and Thompson never had any trouble previous to this difficulty, and Thompson's son, Sedith Thompson, who was introduced by the commonwealth, testified on cross-examination that his father and appellant were always good friends. There was other evidence to the same effect. So, if it be granted that the court erred in excluding the answer of appellant that he and Thompson were good friends, it in no event could be considered prejudicial error.

Complaint is also made that the witness John Stacey was not permitted to testify that Thompson was able to close his knife after the difficulty. On redirect examination, the witness was asked this question: "If he had had a knife in his hand he could have easily shut it up?" An objection was interposed and sustained by the court. This witness testified that he met Thompson coming down the hill driving his team, and, while he was not asked the direct question as to whether he was physically able to close a knife, a jury of sensible men certainly could determine that matter from the evidence as to his physical condition at the time.

Appellant's counsel further complains that the witness Dick Stacey was not permitted to testify as to a

statement made to him by appellant after the difficulty, urging that said statements were a part of the res gestæ. The statements asked about were made at the sawmill after Stegall had returned from the scene of the difficulty. These statements, under no rule, could be admitted as a part of the res gestæ, as they were made after appellant had come from the woods and several minutes after the difficulty occurred.

Appellant's attorney also complains that he was prevented from proving by the witness Owen Miller the general reputation of deceased as to violence when acting as foreman. Proof as to the dangerous or violent character of the deceased can only be made by evidence of his general reputation as respects such character. Therefore the court did not err in sustaining an objection to the question as framed. This witness did, however, state, when asked by the court as to the general reputation of the deceased, that "his general reputation, so far as I know, he was a peaceable man; I never heard of George being in any trouble before this came up." This statement of the witness was admitted without objection.

It is unfortunate indeed for appellant if his theory of the case was correct and that he was forced to strike Mr. Thompson in self-defense, but that was a matter properly submitted to the jury. Finding no error in the record prejudicial to appellant's substantial rights, this court is not warranted in disturbing the verdict of the jury.

For the reasons indicated, the judgment is affirmed.