## Tappan v. Commonwealth.

(Decided Nov. 11, 1932.)

W. E. ROGERS, Jr. and A. H. CLARK for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Affirming.

In the early morning of April 10, 1925, a model T Ford was found at a lonely spot on the Canton road about two and one-half miles from Hopkinsville. The

front wheels of the Ford were resting against the bank which skirted the road on its right-hand side. The rear wheels were diagonally out on the paved portion of the road. The lever which held the pedals was so adjusted as to put the car in neutral, but the headlights were yet burning. In the car was found the body of F. R. Hamilton. His feet were still near the pedals, but his body was sprawled out over the seat with his right arm hanging out and over the right-hand side of the car. Near his hand and on the running board of the car was a .32 caliber revolver with two or three loaded shells and one empty shell in it. Hamilton had been shot in the back of the head, the bullet of .32 caliber entering about halfway between the right ear and the median line. There was no powder burn on the head nor was the hair even singed. He had on two pair of trousers. The pockets of the trousers next to the body were undisturbed, and in them was found a pocketbook with a small amount of change in it. The pockets of the outer pair of trousers were turned inside out and were of course empty. Nearby the car on a grassy knoll was found an empty billfold belonging to the deceased. Those who discovered the body examined the revolver found on the running board, and they testify that in the barrel were some tobacco crumbs, and that the gun gave no evidence of having been recently fired. At the time of his death, Hamilton, a farmer living on the old Linton pike in Trigg county, was heavily involved. He owed about $20,000. After his death some $19,000 of insurance was collected and used to pay his debts. He had gone on the day preceding his death to Hopkinsville for the purpose of seeing the attorney for the Federal Land Bank about a suit which had been brought to foreclose the mortgage on his farm. Those who saw him in Hopkinsville, including the attorney for the land bank, testify, however, that he was in a cheerful mood. About 6 o'clock that evening he collected $15 from a man who owed him that sum. He was seen about 2 o'clock on the morning of April 10th in Hopkinsville by some police officers who knew him and who talked to him. Just where he had been in the meantime the record does not disclose, but these officers say that when they met him he was normal and appeared to be cheerful, and said that he was going to get his car to go home. The authorities, coming to the conclusion that Hamilton had been murdered, were yet unable to obtain any clue whatever as

to who had perpetrated the deed, and so the matter rested.

On October 14, 1931, there walked into the police station at Nashville, Tenn., the appellant, a former resident of Hopkinsville, and who had been living in that town at the time Hamilton was killed. Appellant had served two terms in the penitentiary, one for killing a man at Lexington and one for highway robbery. Just what happened when appellant came in to the police station is in dispute. According to Roy Morgan, a member of the Nashville police force who was in the office at the time, appellant when he came in asked to speak to Lieut. Gibbons. The latter, after talking to appellant for a minute or so, turned to Morgan and said: "Here's a man who wants to make a confession." Morgan inquired what sort of a confession did he wish to make, and appellant replied that it concerned a murder that happened in Kentucky. Morgan then took the appellant upstairs to the office of W. B. Winfree, who was the assistant chief of detectives of the city of Nashville. Winfree and Morgan both testify that, when appellant got to Winfree's office, he made in substance this statement:

> "That he and a negro named Harris killed and robbed a man named Hamilton on the Canton Pike in 1925, and that he wanted to get that off of his chest; that Smoky shot this man in the back of the head, and we asked how much they got. He said between $60 and $80. The chief asked him why he robbed this particular man. He said they had been watching him and followed him out on the road that night."

When asked if appellant made any statement as to why he was making this confession, these witnesses answered that appellant said it had been bothering him since the act had been committed, and he wanted to get it off his mind. He further told these officers that Smoky Harris had later been electrocuted for killing his wife, as indeed he had. See Harris v. Commonwealth, 214 Ky. 787, 283 S. W. 1063. On the other hand, appellant testified that he said to Gibbons that a murder had been committed in Hopkinsville in 1925, and that at that time he had been accused of it, and that it had been worrying him for some time, especially since his mother had died, and that he would like to

communicate with some one in Hopkinsville about it and have it all straightened out, and that he repeated the substance of this to Winfree and Morgan in Winfree's office. On his trial, appellant strenuously denied ever making any confession such as testified to by Winfree and Morgan, denied that he had been with Harris on the night of Hamilton's death, denied that he had robbed Hamilton or killed him, and claimed to have been at home with his aged mother all the night of Hamilton's killing. He was unable on his trial to give the name of any one who had ever accused him of being implicated in the killing of Hamilton, the nearest he came to it being that the Honorable Alvin H. Clark, who was then police judge of the city of Hopkinsville, inquired of him on the day after the killing if he knew anything about it, and, on being told "No," asked him if he ever found out anything about it to let him, the judge, know. He assigned, as a reason why he did not try to straighten this matter out in the lifetime of his mother when she could have testified on his behalf as to where he was on the night preceding the fatal morning of April 10, 1925, the fact that he had before this given his mother a great deal of trouble, and he did not wish to add to her burden of spirit any anxiety over this tragedy. The officers testify that, after appellant had made the confession they claim he made to them, they communicated with the authorities at Hopkinsville, who came and got appellant and took him back to that city. Appellant was later indicted for the murder of Hamilton, and on his trial, the facts being disclosed as above set out, he was found guilty and sentenced to the penitentiary for life. As appellant was unable to employ counsel, those who now represent him on appeal were appointed by the trial court to defend him there and here. They have ably discharged their duty.

As grounds for reversal, they argue, first, that the appellant was entitled to a peremptory instruction, because, aside from the confession of appellant, the corpus delicti was not proved, which being true under section 240 of the Criminal Code of Practice, appellant was entitled to an acquittal. That section reads:

"A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

The construction put upon this section by this court

in a long line of cases is thus stated in Ratliff v. Commonwealth, 182 Ky. 246, 206 S. W. 497, 501:

> "Where a confession by an accused is proven, the rule relating to instructing the jury in regard to it, as provided in section 240, Criminal Code, is, if the corpus delicti of the crime is clearly proven by other evidence independent of the proof of the confession by the accused, an instruction will not be given in accordance with section 240, supra; but if the proof, other than that of the confession, leaves it doubtful whether the crime has been committed, then the instruction should be given, as provided by section 240, supra."

In the instant case, the court gave an instruction based on section 240 of the Criminal Code of Practice. This was all the appellant was entitled to for, aside from his confession, there was evidence, indeed an abundance of evidence even as in the Ratliff Case, supra, to go to the jury and justify its finding that Hamilton had been murdered. The fact that Hamilton was shot in the back of the head at a point where although it would not have been impossible for him to have shot himself, was yet a very difficult place for him to have done so, the fact that his pockets had evidently been rifled, that it was shown he had been paid a substantial sum of money the night before, yet his billfold was discovered some distance away from his body empty, that his pistol had not been recently fired, that his automobile seemed to have run into the bank after its driver had lost control of it, that Hamilton gave no evidence during the afternoon or the night before his killing of being morose or despondent—all combined, was potent evidence of the corpus delicti, and justified the jury in coming to the conclusion that he had been killed by violent means at the hands of some party other than himself. There is no merit in appellant's first contention.

He next argues that the court failed to give the whole law of the case in its instructions to the jury. The court, in addition to the instruction under section 240 of the Criminal Code of Practice, instructed only on the issues of murder and reasonable doubt. It gave no instruction on manslaughter or self-defense. Appellant, citing Stanley v. Commonwealth, 184 Ky. 337, 211 S. W. 577, and kindred cases, argues that, as there was

no eyewitness to Hamilton's killing and the proof of appellant's guilt was entirely circumstantial, the court should have given instructions applicable to every phase of the case, not only on murder but also on manslaughter and self-defense. However, the proof of appellant's guilt in this case did not rest solely on circumstantial evidence. The commonwealth's proof included the claimed confession of appellant which, of course, was admitted as substantive testimony of an eyewitness, and which, if the jury believed was made and true as made, excluded any hypothesis except that of murder. In the cases of the unfortunate companion of appellant, Harris v. Commonwealth, supra, and Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146, we held that, if the testimony of the accused, the only eyewitness to the homicide, leaves room for no theory other than murder or innocence, it is not necessary to give instructions on manslaughter or self-defense, though most of the evidence is circumstantial. Here, if the jury believed the testimony of the appellant given on the trial, he was innocent. If they believed he made the confession the officers said he made, and if they believed that what he said in that confession was true, appellant was guilty of murder. There was no room for any instruction on manslaughter or self-defense, and the court did not err in failing to so instruct.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.