**WESTCHESTER FIRE INS. CO. OF NEW YORK et al. v. GRAY.**

Court of Appeals of Kentucky.

June 19, 1951.

Stoll, Keenon & Park, Lexington, Ogden, Galphin & Abell, Louisville, for appellants.

C. W. Fulton, Flemingsburg, Andrew V. Fox, Maysville, for appellee.

STEWART, Justice.

On February 3, 1948, appellee, James E. Gray, procured two policies of fire insurance on his stock of merchandise in a country store at Sherbourne, Fleming County, Kentucky, each in the amount of $1,500, one from Westchester Fire Insurance Company of New York and the other from Springfield Fire and Marine Insurance Company, both appellants herein. On the night of May 6, 1948, the entire stock of goods in appellee's store was destroyed by fire. Failing to secure adjustment of his loss, actions were filed by appellee on January 5, 1949, against appellants to recover the face sum of each policy. By agreement both cases were tried together before a jury, resulting in a verdict against each appellant for $1,500. From the judgment entered in the lower court, appellants appeal, insisting upon two errors for a reversal:

First, appellee, over the objection of appellants, was permitted by the lower court to prove the extent of his loss by parol evidence, despite the fact that the so-called "iron safe clause" is a part of each of the herein policies.

Second, appellee failed to comply with the iron safe clause in each of his policies requiring him to take an inventory of the stock insured and to keep a complete record of all business transacted, including all cash and credit purchases and sales.

Both policies under consideration contained what is known as the iron safe clause, which is identical in each as follows: "Inventory and Iron Safe Clause: (Requirement to keep books and inventory). It is made a condition of this insurance: (1) That the Insured under this policy shall take an inventory of the stock and other personal property hereby insured at least once every twelve months during the term of this policy, and unless such inventory has been taken within one year prior to the date of this policy, one shall be taken in detail within thirty (30) days thereafter; (2) That the Insured shall keep a set of books showing a complete record of business transacted, including all purchases and sales both for cash and credit; (3) That the Insured shall keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store mentioned in the within policy is not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business is carried on; (4) That in case of loss the Insured shall produce such books and last inventory."

Appellee produced and submitted to the insurers his inventory and ledger book after the fire loss, the originals of which are before the Court on this appeal. The inventory, dated February 1, 1948, prepared three days before the policies were issued, is in long hand on thirteen pages of pencil tablet paper, two columns to each page, and is made up of some 500 items. For the most part, the articles of merchandise are enumerated with a unit price, but the size, brand and grade of none of the items are specified. Many entries were bunched together without itemization, for example: "assortment of ties, $30.00;" "paints, $118.80;" "fertilizer, $114.00"; et cetera. The total amount of the inventory aggregates $4,218.50, based upon the cost price of the goods.

Appellee's records since the inventory were kept by him in the ledger book. The day by day cash sales are entered in gross, unaccompanied by any descriptive details. The major portion of the ledger is devoted

to charge accounts, some dating back to 1946. Regular credit customers, under this heading, are listed by name and with the date of the beginning of each account at the top of a page. Other items charged thereafter under each name are not dated. Appellee testified that, if one desired to charge a small purchase and pay for it within a short time, he would make a memorandum of the sale and hang it upon a certain nail in the store. These tickets were destroyed by the fire. Appellee also took things out of the store for his own use without making any record of the articles.

As to the purchases made by appellee for the store, only the names of 12 persons or firms who had sold him goods on credit, together with the lump sum amount owed by him to each, are set down in the ledger. Further questioning of appellee revealed that these entries represent only a part of the merchandise he had bought from these particular persons or firms, and some of the purchases date as far back as January, 1948. There was also a period of 18 days, just prior to the fire, when his wife and daughter operated the store while appellee was in a hospital in Louisville. All entries of purchases for this period of time, made by his wife or daughter, were set down in a day book that became lost or misplaced before the items could be transferred from it to the ledger. Appellee also bought goods from traveling salesmen for cash, from time to time, which transactions he also kept in the lost or misplaced day book. He and a fellow merchant by the name of Cliff Stephens exchanged merchandise back and forth when one or the other ran out of certain goods. No record of these dealings appears in the ledger.

This Court, after reversing a long line of decisions holding the iron safe clause unenforceable in Kentucky, first recognized the clause as a valid controlling stipulation in the case of World Fire & Marine Insurance Co. v. Tapp, 279 Ky. 432, 130 S.W.2d 848, 852, but we placed this limitation upon its application: "The provision is subject, however, to a fair and reasonable interpretation and to the demand that a fair and substantial compliance therewith shall be sufficient." The Tapp case is followed and cited with approval in the later opinion of Watkins v. California Insurance Co., 296 Ky. 434, 177 S.W.2d 566, 567, wherein it was said: "The purpose of the iron safe clause is to enable the insurance company to ascertain with substantial certainty the value of the merchandise destroyed by fire and to protect it against possible misrepresentation as to the quantity and value of the goods."

Appellants first contend it was error for the circuit court, over their objection, to permit appellee in a suit on fire insurance policies containing the standard iron safe clause to prove the extent of his loss solely by parol evidence.

At the trial appellee made no effort to prove the amount of his claim from his books and other records, but he was permitted by the lower court to establish his case solely by parol testimony. He testified that he had about $4,200 worth of stock in his store when he started his business and that he maintained about the same quantity of merchandise as to value in the store at all times. He further stated that there was no material change in the amount of stock on hand for sale by him during the period of time from February 1, 1948, when the inventory was taken, up until May 6, 1948, when the fire occurred. Appellants objected at the trial to the introduction of all of this evidence.

The legal reason first urged by appellants for a reversal of the judgment of the lower court is a novel one and we have no established precedent in this state to aid us in resolving the point raised.

When we resort to the decisions of other jurisdictions, however, we find that virtually every court, state or federal, that has considered this precise question has decided almost without exception that the books and records themselves must accurately supply the necessary information without the aid of oral testimony except to explain the method of keeping them. We could cite many cases on this well established rule of law but, for the sake of brevity, we refer to the Annotations of 39 A.L.R., p. 1457, 62 A.L.R., p. 636 and 125 A.L.R., p. 358, for a collation of cases on

this point. Appleman's Insurance Law and Practice, Vol. 5, Sec. 3024, p. 105, interprets the iron safe clause applicable to the issue here as follows: "Under such a warranty, (the iron safe clause), the books themselves must generally provide the data desired without the need of resorting to extraneous sources. It is not considered desirable that such information be supplemented by the memory of an interested party, so that the insured's testimony is generally not considered admissible thereon. And it is also the rule that parol testimony will not be allowed for any purpose other than to explain the manner or system of keeping such records although the assistance of those understanding the system will not, of course, be spurned for the purpose mentioned."

It is obvious that appellee departed from the method required by law to establish the extent of his loss under his policy contracts when he undertook to prove his claim against appellants by oral testimony rather than entirely from his inventory and other records. The action of the circuit court in permitting appellee to resort to extraneous evidence that was wholly incompetent in an attempt to validate his case against appellants constitutes a reversible error.

Since this Court adheres to the rule of substantial compliance in the construction and application of the iron safe clause, the inquiry as to whether or not the rule has been satisfied may be a question of law for the court or one of fact for the jury, depending upon the state of the evidence in the particular case. Appellants insist they are entitled to a directed verdict as a matter of law, because the evidence introduced at the trial showed a violation of the iron safe clause by the failure of appellee to take an inventory of the stock insured and to keep a complete record of all business transacted, including all cash and credit purchases and sales.

We quote the following excerpt from Appleman's Insurance Law and Practice, Vol. 5, Sec. 3025, p. 107, with respect to record requirements under the iron safe clause: "No particular form of bookkeeping is required of the insured, and though the system be primitive or informal, it is sufficient if it furnishes the information desired. * * * If a method is employed which is customary with like merchants, it is sufficient, as is the case where all material information can be ascertained from such records with the assistance of those familiar with the system employed."

The original inventory and ledger are before us, as we have stated. We have carefully examined them and, although we are not bookkeepers, we must admit that we cannot ascertain from them the amount of goods appellee had in his store at the time of the fire. We are therefore constrained to hold that appellee did not comply even substantially with the provisions of the iron safe clause in the policies sued on, because his records do not afford an adequate basis for determining with reasonable certainty what actual loss resulted to him from the fire.

In the circuit court, appellee pleaded waiver upon two grounds. The first averment was that appellants waived further proof of loss and compliance with the provisions of the policies involved here because appellee, after the fire, exhibited his inventory and ledger to an adjuster for appellants and told the latter that he had approximately the same amount of goods on hand as shown in the inventory, after which the adjuster, who at the time made certain calculations, then stated to insured that he had sufficient information upon which to perfect his claim against appellants. Instruction No. 1 given at the trial is based upon this theory. While we can see that the statement made by the adjuster may have lulled appellee into a sense of security, yet it did not cause him to do or to omit to do anything to his detriment. In addition, there was no consideration upon which to base the alleged waiver. Phoenix Ins. Co. v. Lawrence, 4 Metc. 9. Accordingly, there was no waiver here and the lower court erred in giving Instruction No. 1.

The second plea of waiver was set forth, although not too definitely, in each reply of appellee after the appellants had by their answers pleaded appellee's violation of the

iron safe clause by his failure to keep its conditions. Substantially this allegation in each pleading was that appellants knew, or by the exercise of ordinary care could have known, that insured was not equipped to fully comply with the requirements of the iron safe clause and that appellants, having such information, continued the policies in force and accepted premiums thereon, so that appellee was thereby excused from full compliance with the above provision in each policy.

Where the insurer in possession of the facts places its stamp of approval upon an omission of the insured to comply with a provision of a policy or pursues a course of action which leads the insured to believe the policy will remain in force, notwithstanding the failure of the policy holder to fulfil a certain condition therein, the insurance company cannot take advantage of such omission or noncompliance upon the part of the insured. Glens Falls Ins. Co. v. Elliott, 223 Ky. 205, 3 S.W.2d 219; National Life & Accident Ins. Co. v. Ransdell, 259 Ky. 559, 82 S.W.2d 820; Cookendorfer v. Pendleton County Farmers Fire Ins. Co., 287 Ky. 735, 155 S.W.2d 204. There is a division of authority as to whether the doctrine of waiver is applicable to the iron safe clause where the insurer or its agent has knowledge that the insured does not have or does not intend to keep an iron safe or otherwise comply with the requirements of the iron safe clause. 45 C.J.S., Insurance, § 726 (d); 29 Am.Jur., Insurance, Sec. 801. We have held the doctrine of waiver applicable where the insurance company had knowledge that the insured, in noncompliance with a policy provision in each instance, was not the sole and unconditional owner in fee of the property insured, or that the property was allowed to become vacant, or that the insured was carrying additional insurance on his property. Citizens' Ins. Co. v. Railey, 256 Ky. 838, 77 S.W.2d 420; Peoples National Fire Ins. Co. v. Jackson, 155 Ky. 150, 159 S.W. 688; Kentucky Growers' Insurance Co. v. Logan, 149 Ky. 453, 149 S.W. 922.

We know of no reason why the agent who takes the application, issues the insurance, receives the premiums and delivers the policy may not by words or conduct waive the provisions of the iron safe clause. However, the burden of proving the waiver relied upon is upon the insured. Conley v. Queen Insurance Co. of America, 256 Ky. 602, 76 S.W.2d 906, 96 A.L.R. 1255. At the trial below no proof was offered by appellee to establish his second allegation of waiver. He may be able to sustain this particular plea of waiver on a retrial of this case. If he fails so to do, the circuit court will then enter a directed verdict for appellants in each action.

Wherefore, the judgment is reversed for proceedings consistent herewith.